NOT FOR PUBLICATION                                    (Docket Nos. 21, 22, 23, 26)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
                                                      :
COMMODITY FUTURES                                     :
TRADING COMMISSION,                                   :
                                                      :
                    Plaintiff,                        :        Civil No. 06-4674 (RBK)
                                                      :
          v.                                          :        **OPINION**
                                                      :
WILLIAM D. PERKINS and                                :
TAX ACCOUNTING OFFICE, INC.,                          :
                                                      :
                    Defendants.                       :
_____:

**KUGLER**, United States District Judge:

      Presently before the Court are four motions: (1) a motion by Plaintiff Commodity Futures

Trading Commission ("Plaintiff" or "CFTC") for summary judgment on its complaint; (2)

CFTC's motion for entry of default and default judgment as to Defendant Tax Accounting

Office, Inc. ("TAO"); (3) a motion for summary judgment by Defendant William D. Perkins

("Perkins"); and (4) a motion by Perkins to stay a ruling on Plaintiff's motion for default

judgment.  CFTC's Complaint alleges that Perkins and TAO violated Sections 4m(1) and 4o(1)

of the Commodities Exchange Act, ("CEA" or "the Act"), 7 U.S.C. §§ 6m(1), 6o(1), as well as

Commission Regulations 4.20, 4.21, 4.24, and 4.25, 17 C.F.R. §§ 4.20, 4.21, 4.24, and 4.25.  For

the reasons provided below, the Court will grant Plaintiff's motion for summary judgment, grant

Plaintiff's motion for entry of default and default judgment, deny Perkins' motion for summary

judgment, and deny Perkins' motion to stay.

1

I.      BACKGROUND

        The motions presently before the Court relate to the role of Plaintiff in a multi-million

dollar commodity fraud operated by a superfund, Tech Traders.  Perkins was the manager and

registered agent for Universe Capital Appreciation, LLC ("Universe").  Perkins solicited $3.4

million from 44 individual Universe investors from January 2002 to April 1, 2004 to invest in

Shasta Capital Associates ("Shasta"), and forwarded $3 million to Shasta.  Shasta was a feeder

fund for Tech Traders, which traded commodity futures contracts.  Robert Shimer and Vincent

Firth, defendants in this Court in a separate action initiated by CFTC, and Equity Financial

Group, LLC ("Equity") managed and controlled Shasta.

        Perkins created Universe, at Shimer's suggestion, to solicit and feed funds to Shasta.

Shasta required a minimum investment of $100,000, so Perkins structured Universe to permit

smaller investors to participate.  Many Universe investors were Perkins' tax and accounting

clients.  Perkins distributed Shasta solicitation materials, including Shasta's Private Placement

Memorandum ("PPM") and other investment-related materials, to potential Universe investors by

U.S. or electronic mail.  Perkins also referred potential Universe investors to Shasta's website

which touted Shasta's success.  In addition, Perkins represented to Universe investors that Tech

Traders, in which Shasta invested 100% of its funds, was extraordinarily successful in trading

futures contracts.  In support of his representation, Perkins pointed to the PPM and website

which claim that Shasta made profits of approximately 100% per year.  In further support,

Perkins represented that an independent Certified Public Accountant ("CPA") verified Shasta's

profits.

        Perkins did not disclose to most of the potential Universe investors that Perkins had

previously been involved with Shimer in failed business ventures.  In particular, prior to forming

Universe, Perkins, Shimer, and William Pflatz were partners in Kaivalya Holding Group, Inc.

("Kaivalya"), an investment company.  Perkins was President of Kaivalya for at least a year, and

David Rowe was the investment offeror.  After 15 months of operation, Rowe stopped paying

interest to Kaivalya's 20-25 investors, and the investors lost most of their principal investment.

Additionally, CFTC alleges that Perkins had been involved in other failed investment activities

with David Rowe and Shimer.  Only some small number of Universe investors were aware of

Perkins' past business losses with Kaivalya.  As an attempt to recoup losses, Perkins created

Universe to invest in Shasta.

　　　　Perkins contends that he relied on representations made by Shimer and Shasta's CPAs, in

addition to a background check of Coyt Murray, President of Tech Traders, when considering an

investment in Shasta.  Perkins did not review Tech Traders' trading statements himself, nor did

he have the requisite background to evaluate any such results.  Perkins never met the CPAs

involved in this investment scheme, J. Vernon Abernathy and Elaine Teague, relying instead on

Shimer's information about their credentials and verification of investment returns.

　　　　Perkins mailed Universe investors their account statements through U.S. or electronic

mail.  The account statements included false representations of profits made by Tech Traders.

　　　　Relief Defendant TAO is a corporation formed by Perkins. OAT Corporation ("OAT") is

a corporation controlled by Perkins.  OAT was formed as a vehicle for Perkins to collect referral

fees and pay reduced taxes.  Perkins and TAO were paid from Universe funds, for Perkins'

management of Universe and his accounting services.  Perkins made personal payments directly

from the Universe bank account, although he alleges only up to the amount he was owed for his

services.

Perkins did not disclose to Universe investors that he had an agreement with Shimer and Firth that, in addition to his disclosed fees, Perkins would also be paid 10% of profits Universe investors made each month as a referral fee.  Perkins also failed to disclose an arrangement by which Shimer and Firth took 50% of profits from Tech Traders' investments.

CFTC alleges that Perkins was under investigation for tax fraud at the time of his communications with potential Universe investors and did not disclose the fact of the investigation to potential investors.  Perkins denies that he was under investigation at the time.

## II.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the non-moving party."  Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her]favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330.  The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is

4

insufficient to establish an essential element of the nonmoving party's case.  Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### B.    Default Judgment

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading.  Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n. 9 (3d Cir. 1990) ("When a defendant fails to appear . . . , the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred.").  The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such "discretion is not without limits, however, and we repeatedly state our preference that cases be disposed of on the merits whenever practicable." Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted).

Although the Court should accept as true the well-pleaded factual allegations of the Complaint, the Court need not accept the moving party's legal conclusions or allegations relating to the amount of damages.  Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); DirecTV, Inc. v. Asher, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing

5

Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and Procedure §
2688, at 58-59, 63 (3d ed. 1998)).  Consequently, before granting a default judgment, the Court
must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since
a party in default does not admit mere conclusions of law."  Asher, 2006 WL 680533, at *1
(citing Wright, et al., § 2688, at 63); DirecTV, Inc. v. Croce, 332 F. Supp. 2d 715, 717 (D.N.J.
2004).

## III.    ANALYSIS[1]

### A.    7 U.S.C. § 6m(1)

Plaintiff CFTC alleges that because Perkins failed to register with CFTC as a Commodity
Pool Operator ("CPO"), Perkins violated § 4m(1) of the Act, 7 U.S.C. § 6m(1), when he
allegedly used instrumentalities of interstate commerce, such as the mail and the Internet, in
connection with his business as a CPO.  Perkins insists that Universe was not a "commodity
pool," the threshold issue for bringing this action under the jurisdiction of the CFTC.  Both
parties move for summary judgment on this claim.  The Court finds that Perkins was a CPO, and
that he violated 7 U.S.C. § 6m(1) by failing to register, then using the U.S. and electronic mail to
communicate with investors in Universe.

The CEA requires a CPO to register with the CFTC.  7 U.S.C. § 6n.  The Act prohibits
unregistered CPOs from "mak[ing] use of the mails or any means or instrumentality of interstate
commerce in connection with his business as [a CPO]."  7 U.S.C. § 6m(1).  Congress amended

---

[1]CFTC and Perkins have both filed motions for summary judgment which each generally
address the same issues.  For clarity, the Court will proceed with an analysis of the issues, rather
considering each motion independently.  Where issues are only taken up in one or the other
motion, the Court will so indicate.

the CEA and established the CFTC in 1974 in an attempt to ensure "fair practice and honest

dealing on the commodity exchanges and provid[e] a measure of control over those forms of

speculative activity which often demoralize the markets to the injury of producers, consumers,

and the exchanges themselves."  S. Rep. No. 1131, 93d Cong. 2d Sess., reprinted in [1974] U.S.

Code Cong. & Ad. News, 5843, 5844; Lopez v. Dean Witter Reynolds, Inc., 805 F.2d 880, 883

(9th Cir. 1986).  For the purposes of the CEA, "[p]ool means any investment trust, syndicate or

similar form of enterprise operated for the purpose of trading commodity interests."  17 C.F.R. §

4.10(d)(1).  As amended by Congress in 1992, a "commodity pool operator" is defined as:

> any person engaged in a business that is of the nature of an investment trust,
> syndicate, or similar form of enterprise, and who, in connection therewith, solicits,
> accepts, or receives from others, funds, securities, or property, either directly or
> through capital contributions, the sale of stock or other forms of securities, or
> otherwise, for the purpose of trading in any commodity for future delivery on or
> subject to the rules of any contract market.

Pub L. No. 102-546, 106 Stat 3590 (1992).

A commodity pool is distinguished from other investment entities by the aggregation of

investors' funds into a single account.  Funds from the account are then invested without regard

to the source of specific funds, and the profits and losses are distributed pro rata among the

investors.  In Lopez v. Dean Witter Reynolds, Inc., 805 F.2d 880, 884 (9th Cir. 1986), the Ninth

Circuit articulated four requirements to ascertain the presence of a commodity pool: "(1) an

investment organization in which the funds of various investors are solicited and combined into a

single account for the purpose of investing in commodity futures contracts; (2) common funds

used to execute transactions on behalf of the entire account; (3) participants share pro rata in

accrued profits or losses from the commodity futures trading; and (4) the transactions are traded

7

by a commodity pool operator in the name of the pool rather than in the name of any individual investor." Id.; see also Nilsen v. Prudential-Bache Securities, 761 F.Supp. 279, 292 (S.D.N.Y. 1991) (citing Lopez, 805 F.2d at 884) ("Essentially, a commodity pool operator is one who manages an investment fund, similar to a mutual fund, in which the assets of several investors are invested together with gains or losses shared pro rata by the participants."). Courts have been adamant that where funds are not actually commingled, a commodity pool does not exist. Thus, the Lopez Court held that the enterprise at issue was not a commodity pool because "not all accounts traded the same contracts," and "[t]herefore, not all accounts shared a pro rata profit or loss." Id. at 884.

This Court previously held that Shasta constituted a commodity pool. See Commodity Futures Trading Comm'n v. Equity Fin. Group, No. 04-1512, 2006 WL 3359418 (D.N.J. Nov. 16, 2006); see also Commodity Futures Trading Comm'n v. Equity Fin. Group, No. 04-1512, 2005 WL 2864784 (D.N.J. Oct. 4, 2005). Likewise, the Court has held that Equity was the CPO for Shasta, because Equity solicited funds from investors, pooled those funds, and invested them in futures trading through Tech Traders. See Commodity Futures Trading Comm'n v. Equity Fin. Group, no. 04-1512, 2006 WL 3751911 (D.N.J. Dec. 18, 2006); see also 7 U.S.C. § 1a(4) (defining "[c]ommodity pool operator" as "any person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds . . . for the purpose of trading in any commodity for future delivery . . . .")

Perkins argues that his company, Universe, does not fall under the definition of a

commodity pool.[2]  Perkins contends that because CFTC cannot establish that Universe is a commodity pool under the CEA, it cannot deem Perkins a CPO, nor establish the elements of the claims in the Complaint.  He also argues that Tech Traders was the only commodity pool in the investment scheme, essentially contending that only one pool may exist per each scheme, a proposition offered without any legal support.

Universe satisfies the four factors of the Lopez test: (1) the funds of individual investors were pooled in Universe's bank account; (2) these commingled funds were transferred en masse to Shasta, which deducted fees, then transferred the remaining funds to Tech Traders to be invested in commodity futures, without distinguishing between the funds of individual investors; (3) Universe investors shared pro rata in the alleged profits; and (4) trades were made on behalf of the pool rather than in the name of individual investors.

Unlike the defendant entities in Lopez, Universe actually pooled investor accounts. Although Perkins argues otherwise, he presents no evidence to suggest that there is a genuine issue of fact on this point.  Perkins admits in his answer that Universe investors sent funds to Universe's account, which Perkins then forwarded to Shasta for payment of fees and investment in Tech Traders.  That Perkins alleges (without evidentiary support) that "most of the time," Universe investors' funds were wired one at a time to Shasta is irrelevant, as Perkins has provided no evidence to support his argument that trades were made on behalf of investors as individuals.  (Perkins Reply at 6-7.)  Perkins admits that Universe investors were to receive a pro rata share of the profits.

_____

[2]In furtherance of this argument, Perkins notes that "case precedence is conspicuously absent from the Complaint."  (Perkins Opp. at 2.)  The Court notes that such a requirement is conspicuously absent from Federal Rule of Civil Procedure 8.

The fact that Universe did not invest in commodity futures directly, but instead transferred funds to Shasta and then to Tech Traders to invest does not affect Universe's status as a commodity pool.  In fact, the Universe transactions are like those in <u>Commodities Futures Trading Commission v. Heritage Capital Advisory Services, Ltd.</u>, Comm. Fut. L. Rep. (CCH) ¶ 21,627, p. 26,384 (N.D. Ill. 1982), another case formulating the basis for the <u>Lopez</u> decision. <u>Heritage</u> involved an operation very similar to the Universe/Shasta/Tech Traders scheme: defendants solicited funds from individual customers, combined those funds into common investment accounts where the funds were commingled, and then gave those funds to a third party for investment in the futures market.  In <u>Heritage</u>, the Court held that because investors expected to share profits and losses on a pro rata basis, the enterprise was a commodity pool, regardless of the fact that it was a third party who conducted the actual investment activities.  <u>Id.</u> The Court finds, as it previously found in the <u>Equity</u> case, that a third party that ultimately conducts the actual investment activities is irrelevant to the question of whether a commodity pool in fact existed.  That Universe is one step further removed from Tech Traders than Shasta is irrelevant in the <u>Lopez</u> analysis.

As in the Equity case, Perkins argues that because the Universe funds were not traded in Universe's name, Universe does not satisfy the fourth factor of the <u>Lopez</u> test and cannot be a commodity pool.  As in <u>Equity</u>, this Court is not convinced, as Perkins' reading of <u>Lopez</u> is too literal.  The appellation given the actual transaction is irrelevant, so long as it is a pooled fund and not conducted in the names of individual customer accounts.  See <u>In re Slusser</u>, 1998 WL 537342 at n. 36 (holding that entities at issue were commodity pools even though "[t]he pools were not traded in the name of the pool . . . [t]he key to the fourth factor is that the funds were

not traded in the name of any individual investor, as was the case with the pools at issue here."). This pooling is clearly present here.

That Universe was a vehicle for investment in Shasta, which then sent funds to Tech Traders, does not change the qualities of Universe that satisfy the <u>Lopez</u> analysis. The Court finds no genuine issue of fact that Universe was a commodity pool.

Other than disputing that Universe is a commodity pool, a question of law now decided by this Court, Perkins does not raise a genuine issue of material fact to dispute his status as a CPO. In addition, it is undisputed that Perkins is not registered with CFTC in any capacity. (Perkins Answer to Compl. at ¶ 1b.)

The question remaining before the Court then is whether Perkins used the mails and other instrumentalities of interstate commerce in connection with his business as a CPO. In his January 18, 2008 deposition, Perkins admitted that he sent Universe investors' account statements through the U.S. mail, or through electronic mail. Also on that date, he admitted directing prospective Universe investors to Shasta's website, and sending them Shasta's PPM and/or Project Summary Report via U.S. or electronic mail.

The evidence demonstrates that Perkins, acting as an unregistered CPO, used instrumentalities of interstate commerce, i.e., U.S. and electronic mail, in connection with his business. Therefore, the Court concludes that Perkins violated 7 U.S.C. § 6m(1). Accordingly, the Court will grant CFTC's motion for summary judgment on this count and deny Perkins' motion on the same.

**B.      7 U.S.C. §§ 6o(1)(A), (B)[3]**

Plaintiff alleges that the Perkins violated 7 U.S.C. §§ 6o(1)(A) and/or (B) and moves for summary judgment on those claims.  Perkins moves for summary judgment on the same.  The Court finds that Perkins recklessly employed a scheme which defrauded Universe investors and potential investors.

Section 6o(1) of the Act states:

It shall be unlawful for a commodity trading advisor, associated person of a commodity trading advisor, commodity pool operator, or associated person of a commodity pool operator by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly–

(A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or

(B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

The purpose of § 6o(1) is to "implement[] the fiduciary capacity that characterizes the advisor's relationship to his clients."  Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 285 (9th Cir. 1980).  Therefore, actual registration as a CPO with CFTC is not required to fall within the ambit of § 6o(1).  Id. at 282.

Courts hold that while the language of § 6o(1)(A) requires a defendant to act with scienter, § 6o(1)(B) does not.  See, e.g., Commodity Trend Serv. v. Commodity Futures Trading Comm'n, 233 F.3d 981, 993 (7th Cir. 2000); Messer v. E.F. Hutton & Co., 847 F.2d 673, 678-79 (11th Cir. 1988); First Nat'l Monetary Corp. v. Weinberger, 819 F.2d 1334, 1342 (6th Cir. 1987);

_____

[3]There is argument in the pleadings about the nature of this of CFTC's claims, which is clearly described in its Complaint as falling under § 4o(1) of the CEA, 7 U.S.C. § 6o(1).  Perkins is in error in continually referring to this as an action under 7 U.S.C. § 6b(a)(2).

see also Aaron v. SEC, 446 U.S. 680, 697 (1980) (interpreting the language "operates as a fraud or deceit" as "plainly focus[ing] on the effect of a particular conduct"). Section 6o(1) allows the CFTC to proceed on either or both of two theories: (1) the CPO acted in order to defraud a customer or potential customer, § 6o(1)(A), and (2) the CPO engaged in a transaction, practice, or course of business that effected a fraud upon a customer or potential customer, § 6o(1)(B).

The scienter element of § 6o(1)(A) requires that the misrepresentation by the CPO be made with "an intent to defraud or a willful and reckless disregard of the client's bests interests." Messer v. E.F. Hutton & Co., 847 F.2d 673, 678 (11th Cir. 1988). A CPO's conduct demonstrates the requisite scienter when it involves "highly unreasonable omissions or misrepresentations . . . that present a danger of misleading [potential investors] which is either known to the Defendant or so obvious that Defendant must have been aware of it." Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001).

As the Court determined supra that Perkins was a CPO, he may be held liable under § 6o(1) and is not free from liability merely because he failed to register. The inquiry is whether Perkins used the "mails or any means or instrumentality of interstate commerce" to "employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant" or "engage in any transaction, practice or course of business which operate[d] as a fraud or deceit on any client or participant or prospective client or participant." 7 U.S.C. § 6o(1).

CFTC offers uncontroverted evidence that Perkins disseminated the Shasta PPM, directed investors to the Shasta website, and distributed other Shasta investment materials showing fraudulent performance numbers allegedly verified by a CPA. Moreover, Perkins did not disclose his fee sharing agreement, under which he took a greater than disclosed share of

Universe investors' profits.  He also failed to disclose fee arrangements benefitting Equity, which were not apparent in the investor materials Perkins provided.  Perkins did not tell Universe investors that he had prior failed business dealings with Shimer, nor did Perkins investigate the Shasta/Tech Traders investment scheme fully, knowing full well that Shimer had previous failed investment experience.  Diligence required Perkins to inquire fully into the validity of the striking returns Shasta reported, even though Shimer and Shasta's CPAs verified the representations Perkins says he relied upon in communicating with Universe investors.

Perkins' opposition to CFTC's motion on this issue is focused on his contention that fraud is rarely an appropriate question for summary judgment.  Otherwise, and in his motion for summary judgment, Perkins essentially disputes CFTC's presentation of evidence, arguing that the evidence is irrelevant or immaterial to the issues in dispute.  Perkins has not presented evidence to dispute CFTC's evidence, including Perkins' own deposition testimony, to show that there is a genuine issue of material fact for trial.  Perkins relies on mere allegations and arguments regarding immaterial issues.  Perkins does not provide evidence to support his allegation that he had a background check conducted on Coyt Murray, although the Court is not inclined to see that act as compensation for Perkins' other failures.

Perkins recklessly employed a device, scheme, or artifice to defraud a client or participant or prospective client or participant by deliberately failing to disclose his background with the other principals involved in the investment scheme, nor his own fee arrangements; by recklessly disseminating information about Shasta's investment strategy and history - via U.S. and electronic mail - without reasonably inquiring into the validity of the representations regarding performance; and by recklessly soliciting investments in Shasta without knowing if the

14

investment was sound nor inquiring into the legitimacy of the investment scheme.  Perkins acted in violation of 7 U.S.C. § 6o(1)(A).

Given the nature of uncontroverted evidence that Perkins recklessly made the above-referenced representations, or failures to represent, to potential Universe investors when he distributed the Shasta PPM and other investment materials via U.S. and electronic mail and directed potential investors to the "verified" performance numbers on the Shasta website, and that the communications had the effect of defrauding or deceiving potential investors, the Court concludes that Perkins violated 7 U.S.C. § 6o(1)(A), and the Court will CFTC's motion for summary judgment on this count.  The evidence described <u>supra</u> also supports the grant of summary judgment on § 6o(1)(B), the portion of the statute not requiring a showing of scienter because Perkins engaged in a course of business which operated as a fraud on investors and potential investors.  Accordingly, the court will grant summary judgment for CFTC on its claims under 7 U.S.C. § 6o(1) and will deny Perkins' motion on the same.

**C.     17 C.F.R. § 4.20**

CFTC moves for summary judgment on its claim that Perkins violated 17 C.F.R. § 4.20 when he commingled Universe funds with his own.  That provision provides, "No commodity pool operator may commingle the property of any pool that it operates or that it intends to operate with the property of any other person."  17 C.F.R. § 4.20(c).  CFTC points to evidence that Perkins wrote personal checks from the Universe corporate account, which Perkins argued were only up to the amount of the fees due to him, in support of this claim.  The evidence clearly establishes that funds from participants in Universe were commingled with Perkins' funds, including those amounts allegedly due to him.  The evidence, in particular the checks written by

15

Perkins, also clearly establishes that Perkins spent funds from the Universe account for his own personal use.  Accordingly, the Court finds that Perkins violated 17 C.F.R. § 4.20(c).

**D.     17 C.F.R. § 4.21**

CFTC moves for summary judgment on its claim that Perkins violated 17 C.F.R. § 4.21 by failing to provide disclosure documents to all prospective Universe investors.  That provision requires a CPO, such as Perkins, to deliver to prospective pool participants a disclosure document, prepared in accordance with §§ 4.24 and 4.25, no later than the time it delivers a subscription agreement for the investors.  17 C.F.R. § 4.21.  Perkins does not address this ground for CFTC's motion directly.  The evidence presented by CFTC shows that Perkins distributed an Operating Agreement and a Subscription Agreement to potential Universe investors and the Shasta PPM to some, but not all of the investors.  Perkins does not provide evidence to show that there is a genuine issue of fact as to whether or not all investors were provided with the PPM.  Accordingly, the Court finds that Perkins violated 17 C.F.R. § 4.21.

**E.     17 C.F.R. § 4.24**

CFTC moves for summary judgment on its claim that Perkins violated 17 U.S.C. § 4.24 by failing to provide the requisite disclosures in the Operating Agreement, Subscription Agreement, and PPM provided to investors.  That provision requires disclosure of a host of information, including the business background of the individuals involved and the fees to be paid to those individuals.  17 C.F.R. §§ 4.24(f), (i).  CFTC's allegation is that Perkins' business background was never disclosed, including his lack of experience managing a commodity pool.  Perkins addresses this contention at various points in his opposition to CFTC's motion as well as his own motion papers.  Perkins argues that he never represented that he would be trading

16

commodities futures, so his own business background was irrelevant.  However 17 U.S.C. §

4.24(f)(1)(i) requires disclose of the business background of the CPO, and this Court found

Perkins to be the CPO for Universe, so Perkins' business background should have been

disclosed.  CFTC also alleges that the disclosure documents provided to Universe investors did

not included the name and business background of Shimer, nor anything about Shimer or Firth's

past business failures.  Further, Murray, nor Tech Traders, were mentioned in the documents.

Perkins only real dispute as to this issue is that some of the Universe investors had been involved

in Kaivalya and would know about Shimer from that experience.  The Court finds that there is no

genuine issue of fact that the omissions evidenced by a review of the disclosure documents

amount to a violation of 17 C.F.R. §§ 4.24(f) and (i), and accordingly find that Perkins violated

those provisions when he provided the disclosure documents to Universe investors.

### F.    17 C.F.R. § 4.25

CFTC moves for summary judgment on its claim that Perkins violated 17 C.F.R. § 4.25

by failing to disclose the name of the commodity trading advisor, Murray, nor the commodity

pool for which he traded Universe investors' funds, Tech Traders, nor details of the accounts

managed and trades undertaken by Tech Traders.  The terms of 17 C.F.R. § 4.25 require

disclosure of additional information to that which is required under§ 4.24, including the name of

the person trading the account, the number of accounts directed by that person, and the total

assets under the management of that person.  17 C.F.R. § 4.25(a)(ii).  Perkins does not dispute

CFTC's contentions on this issue.  The evidence shows that the requirements of 17 C.F.R. § 4.25

were not satisfied.  Accordingly, the Court finds that Perkins violated 17 C.F.R. § 4.25(a)(ii).

### G.    Relief Requested as to Perkins

### 1.      Injunctive Relief

CFTC, in its motion for summary judgment, renews its request that the Court enjoin Perkins from all commodity related business activity, as well as all violations of the Act. Perkins' only response, in his own motion for summary judgment, is that CFTC is not entitled to any relief because Perkins did not commit the alleged violations.  The Court, having found no genuine issue of material fact as to Perkins' violations of the provisions of the Act as alleged by CFTC, sees no reason why it should not enter an injunction at this time.  Further, the evidence in this case suggests the possibility of continued misconduct.  A permanent injunction will therefore be entered against Perkins, prohibiting him from: (1) engaging in conduct in violation of 7 U.S.C. §§ 6m(1) and 6o(1), (2) directly or indirectly soliciting or accepting any funds from any person in connection with the purchase or sale of any commodity futures or options contract, (3) engaging in, controlling, or directing the trading of any commodity futures or options accounts, on his own behalf or for or on behalf of any other person or entity, whether by power of attorney or otherwise, (4) introducing customers to any other person engaged in the business of commodity futures and options trading, (5) issuing statements or reports to others concerning commodity futures or options trading, and (6) otherwise engaging in any business activities related to commodity futures or options trading.

CFTC has clearly established its right to an injunction pursuant to 7 U.S.C. § 13a-1. CFTC proved that given Perkins' history of failed businesses and investments, his conduct in this case of recklessness, and his subsequent attempts to blame others for his transgressions, there is a reasonable likelihood of future violations.  See CFTC v. Muller, 570 F.2d 1296, 1300-01 (5th Cir. 1978).

### 2.      Restitution and Disgorgement

CFTC, in its motion for summary judgment, renews its request that the Court order

disgorgement and restitution.  The Court will do so.  CFTC supports the instant motion with the

sworn declaration of Joy McCormack, made under penalty of perjury, who states that Universe

investors, having already been repaid a portion of their principal investments through the related

Equity claims process, are still owed $1,147,289.77, exclusive of pre-judgment interest.  Perkins

argues in his opposition to the motion that restitution is not an available remedy.  "Restitution is

meant to make the damaged persons whole and compensate them for a defendant's wrongful

acts." Commodity Futures Trading Com'n v. AVCO Financial, 28 F. Supp. 2d 104, 121

(S.D.N.Y. 1998).  Here, the Court will grant summary judgment on CFTC's claims that Perkins

misappropriated over $1 million from Universe investors through his own fraud, recklessness,

and misrepresentation.  The Court finds that restitution is, therefore, proper in this case, and will

order that Perkins shall be required to pay the $1,147,289.77 in restitution owed to Universe

investors.  The award shall also be subject to pre-judgment interest.

Moreover, in cases such as this one, the Court has "broad equitable power to fashion

appropriate remedies, including ordering that culpable defendants disgorge their profits." . . .

"The disgorgement remedy is not intended to compensate investors; rather, it is intended to

deprive the violator of his ill-gotten gains and to further the deterrence objectives of the [Act]."

Id.  McCormack's declaration also details the amount of Perkins' ill-gotten gains.  The Court

finds that disgorgement of ill-gotten gains is appropriate in this case in the amount of

$177,231.46, exclusive of the funds received by Defendant TAO.  The award shall also be

subject to pre-judgment interest.

19

### 3.      Civil Monetary Penalties

CFTC, in its motion for summary judgment, renews its request that the Court order the assessment of civil monetary penalties, at three times the amount of Perkins' gain, against Perkins.  Section 6c(d)(1) of the Act provides that the Court may assess civil monetary penalties of not more than the greater of $100,000 or triple the monetary gain to the person for each violation.  7 U.S.C. § 13a-1(d)(1).  To merely bar Perkins from future violations of the Act and require that he pay back the money he received would be a meaningless penalty and not serve as a specific or general deterrent.  Given the egregious nature of Perkins' conduct as detailed supra, the Court concludes that an amount double the gain to Perkins is warranted.  Thus, Perkins shall be ordered to pay $354,462.92.  The award shall also be subject to pre-judgment interest.

### 4.      Fees and Costs

CFTC, in its motion for summary judgment, renews its request that the Court order Perkins to pay fees and costs. An award of costs and fees is made pursuant to 28 U.S.C. §§ 1920 and 2412(a)(2).  The Court, having granted CFTC's motion for summary judgment on the entirety of its Complaint, finds it appropriate to make an award of fees and costs here and will so order.

### H.     Motions Regarding Defendant TAO

### 1.      Motion for Entry of Default

Default will be entered against Defendant TAO.  CFTC moves for entry of default as to TAO, contending that TAO has failed to file an Answer in this matter or otherwise plead.  TAO has not opposed the instant motion.  Perkins did file a motion to stay a determination of CFTC's motion, which is addressed infra.

It is well-settled that "a corporation . . . may appear in federal court only through licensed counsel." Rowland v. California Men's Colony, 506 U.S. 194, 217 (1993). To be sure, individuals are free to represent themselves. 28 U.S.C.A. § 1654.

Perkins, as President of TAO was free to waive service of process on behalf of TAO, as he did on October 5, 2006. (Docket No. 3.) Perkins later filed a notice of appearance in this case, notifying the Court that he would be proceeding pro se. (Docket No. 4.) He subsequently has filed papers on his own behalf. As Perkins has represented to the Court that he is not an attorney, he may proceed pro se, representing himself, but he may not represent TAO. The Court finds upon a review of the docket that TAO has not filed an Answer in this matter, nor has it otherwise pled. Accordingly, the Court will grant CFTC's motion, and will order the clerk to enter default as to Defendant TAO.

### 2.      Motion for Default Judgment

CFTC also moves for entry of default judgment in the amount of $76,006.68. As above, TAO did not oppose the motion. The Court will not repeat the statements of law supra, as TAO is alleged to have committed the same violations as Perkins, as described above.

CFTC has alleged in its Complaint that TAO is Perkins' private bookkeeping service, unrelated to Universe. Further, it alleged that TAO received funds directly traceable to the funds Perkins solicited from Universe investors as a part of Perkin's allegedly fraudulent activities. The Complaint alleges that TAO had no legitimate interest in the funds or benefits it may have received as a result of the funds fraudulently obtained by Perkins for Universe.

CFTC supports the instant motion with the sworn declaration of Joy McCormack, made under penalty of perjury, who states that she was the investigator assigned to the investigation

21

into Perkins and Universe as well as the related Equity case.  McCormack states that she issued

subpoenas for records regarding Perkins, Universe, and TAO.  Some of those records were

subpoenaed from The Village Bank, specifically regarding an account number ending in 1814,

Universe's sole bank account.  McCormack explains that her review of all of the records showed

that $76,006.68 had been transferred from Universe's bank account to TAO.  McCormack details

the transfers in an attachment to her declaration.

As the Court will grant summary judgment against Perkins on CFTC's claims regarding

the underlying fraud, and CFTC supports its instant motion for default judgment with an

accounting of those funds which were transferred from Universe to TAO, the Court will enter

default judgment against TAO.  The Court will award $76,006.68 to the Universe participants.

The award shall also be subject to pre-judgment interest.  To the extent that the disgorgement

amount of $76,006.68 overlaps with the amount for which Perkins is liable individually, the

disgorgement should be joint and several with Perkins' obligation.

### 3.     Motion to Stay

Perkins filed a motion to stay the Court's ruling on CFTC's motion for entry of default

and default judgment, arguing that the possible entry of default would be contrary to the Federal

Rules of Civil Procedure and would deprive Perkins of his right to appeal the Court's decision

with any final judgment against Perkins.  Perkins lacks standing to move to stay a ruling on a

motion targeted at TAO, another Defendant in this matter.  Accordingly, his motion is denied.

## IV.    CONCLUSION

For the foregoing reasons, the Court will GRANT CFTC's motion for summary judgment

on the charge that Perkins violated Sections 4m(1) and 4o(1) of the Commodities Exchange Act,

7 U.S.C. §§ 6m(1), 6o(1), as well as Commission Regulations 4.20, 4.21, 4.24, and 4.25, 17

C.F.R. §§ 4.20, 4.21, 4.24, and 4.25.  Further, the Court will GRANT CFTC's motion for a

judgment ordering an injunction, restitution, disgorgement, civil monetary penalties, and fees and

costs.  The Court will DENY Defendant Perkins' motion for summary judgment.  The Court will

GRANT CFTC's motion for entry of default and default judgment as to Defendant TAO; and

will DENY Defendant Perkin's motion to stay CFTC's motion for entry of default and default

judgment.  The accompanying Order shall issue today.


Dated:_____3-25-09_____                           ____/s/ Robert B. Kugler____
                                                      ROBERT B. KUGLER
                                                      United States District Judge